aIN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 8, 2012 Session

## ANGELA K. THOMAS v. JEFFERY K. THOMAS

**Appeal from the Chancery Court for Rutherford County**
**No. 090894DR     Royce Taylor, Judge**

---

**No. M2011-00906-COA-R3-CV - Filed March 26, 2013**

---

In this post-divorce appeal, Husband appeals the trial court's imputation of income to him for the purpose of setting his alimony and child support obligations, the determination of parenting time, and the award of a retirement account to Wife.  Finding no error, we affirm the trial court.

**Tenn. R. App. P. Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, M.S., P.J., and FRANK G. CLEMENT, JR., J., joined.

Joseph Paul Weyant, Clarksville, Tennessee, for the appellant, Jeffery K. Thomas.

Kimpi King Kendrick, Murfreesboro, Tennessee, for the appellee, Angela K. Thomas.

### OPINION

FACTUAL AND PROCEDURAL HISTORY

Angela Thomas ("Wife") and Jeffery Thomas ("Husband") were married in April 1994; two children were born of the marriage.  In June 2009, Wife filed for legal separation from Husband.[1]  In October 2009, the parties attempted reconciliation, which was ultimately

---

[1] As grounds for legal separation, Wife alleged inappropriate marital conduct based on Husband's alcoholism and sex and pornography addiction.  In her complaint, Wife also requested a pendente lite and permanent restraining order "enjoining and restraining Husband from posting on the internet and/or distributing the sexually oriented photographs and videos" that he had of her. A restraining order and show cause order were entered June 15, 2009. A hearing was held before a special master on June 24, 2009. A mutual restraining order was issued on July 7, 2009 prohibiting both parties from posting the photos and
(continued...)

unsuccessful and, in March 2010, Wife moved to reinstate her petition for legal separation.

After an April 27, 2010 pendente lite hearing before a special master, and by order entered May 17, 2010, both parties were allowed to live in the marital home, Wife was named temporary primary residential parent, and Husband was given two days per week of residential parenting time. With regard to finances, Husband was ordered to continue to pay the mortgage, to pay for Wife's car repairs, and to "provide an accounting, including but not limited to receipts, etc., evidencing how the proceeds of the children's college funds were spent." The court ordered the remaining proceeds of the children's college fund to be "set aside, and any future expenditures shall be coordinated through the parties' respective counsel."

The special master held a second pendente lite hearing on August 23, 2010 and, by order entered September 2, 2010, the court acknowledged that "neither party is cooperative with the other," noting that Husband turned off the air conditioning unit without telling Wife, and Wife expended $1,000 on repairing the air conditioning unit without getting Husband's permission. The court expressed "concerns that Husband has not provided an accounting as ordered" and "question[ed] his respect for court orders." The court granted Husband parenting time one night per week and every other weekend and ordered him to vacate the marital residence for 60 days, to continue to pay the mortgage unless the parties filed bankruptcy, to pay Wife's health insurance, and to give her $50 a week for groceries. Wife was ordered to vacate the marital home by October 30, 2010.

After a third pendente lite hearing on October 25, 2010 and by order entered November 16, 2010, the court ordered Wife to vacate the marital home by November 30, 2010 and ordered Husband to pay the children's and Wife's health insurance premiums. With regard to alimony and child support, the court set Husband's income at $2,400 per month and ordered him to pay $605 per month in child support and $850 per month in temporary spousal support.[2] The court further ordered both parties not to discuss the case with their children and not to have the children around anyone with whom they share a romantic relationship.

On December 8, 2010, Wife amended her original complaint to one for absolute

_____

[1](...continued)
videos, and ordering Husband to immediately remove the ones he had posted on the internet.

[2] In his pro se objection to this order, Husband averred that he could not afford the amounts he was ordered to pay, that the court-ordered counseling was not the right solution for the children, and that Wife caused the divorce.

divorce. Wife also filed a motion for criminal and/or civil contempt against Husband alleging that he willfully refused to pay her any amounts previously ordered. Husband then filed a motion for civil contempt against Wife because she had not vacated the home by November 30. After the January 13 and 14, 2011 hearings, and by order entered February 28, 2011, the court allowed Husband to purge himself of contempt by paying Wife $3,465.93, which he paid. Among other things, the court found that "the accounting of expenditures of the children's college funds that Husband provided to Wife [Exhibit 16] is inadequate to satisfy the court's prior orders," and ordered Husband to provide a complete accounting by February 13, 2011.

On January 31, 2011, the court held a hearing on Husband's motion to modify the November 16, 2010 order pertaining to child support and spousal support. The court entered an order on February 8, 2011, making specific findings about Husband's truthfulness,[3] the amounts he had paid or failed to pay (specifically regarding the mortgage), and ordering that Wife could remain in the marital home pending further court orders.

After a final trial on March 8 and 9, 2011, the trial court declared the parties divorced based on stipulated grounds, designated Wife as primary residential parent, and adopted her proposed parenting plan, finding that it served the children's best interests. In part, the court based its custody decision on the limiting factors of neglect or substantial nonperformance of parenting responsibilities (Tenn. Code Ann. § 36-6-406(d)(1)) and of abusive use of conflict (Tenn. Code Ann. § 36-6-406(d)(5)). In its March 29, 2011 final order, the court found both Husband and Wife to be underemployed and imputed a yearly income of $60,000 and $24,000 to them respectively. Husband's child support obligation was set at $862 per month. Wife was awarded rehabilitative alimony to update her training in the amount of $350 per month beginning April 1, 2011 and $550 per month beginning April 1, 2012 for forty-eight months. Husband's retirement account was awarded to wife as alimony *in solido*.

Husband appeals the court's finding of underemployment and imputation of income to him, the court's adoption of Wife's permanent parenting plan, and the award of his retirement account to Wife.

---

[3] The court specifically stated:

Therefore, it appears that either [Husband] has resources which he has not revealed to the Court from which he will be able to pay the mortgage arrears and from which he has obtained in the neighborhood of $5,000.00 to $6,000.00, in cash in the last month and in which case he should be able to pay the house note, child support, and spousal support, or he is so irretrievably broke that he will not be able to pay anything. Your Special Master believes it is the former. Therefore, [Husband] should not be granted the relief requested and wife should be allowed to stay in the marital home until further order of the Court.

ANALYSIS

## I. *Imputation of Income*

Husband appeals the trial court's imputation of income to him for the purpose of setting his child support and alimony[4] obligations. With regard to Husband's income, the trial court stated:

> THAT after thorough review of the entire court file, including all previously submitted exhibits from prior hearings, the court was unable to find any proof of [Husband's] income other than his self-prepared statement of payments received;
>
> . . .
>
> THAT [Husband's] income during his years working as a real estate agent/broker/builder (1997 - present) has averaged about $100,000 per year.
>
> THAT [Husband's] income for 2010 showed $25,000 plus $2,000.00 in hard expenses. [Husband] has the ability to earn much more. He has fallen on hard times, but he is under-employed.
>
> THAT the income determined by the Special Master of $2,400.00 per month is appropriate for now, but not the long-term.
>
> THAT [Husband] is capable of earning $60,000 per year. Beginning in January 2012, [Husband's] income shall be imputed at $60,000.00 annually.

Pursuant to Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2)(i), imputation of income for the purpose of setting child support payments is appropriate when (1) a parent has been determined to be willfully and/or voluntarily underemployed or unemployed, (2) when there is no reliable evidence of income, or (3) when the parent owns substantial non-income producing assets. The determination of whether a party is willfully and voluntarily underemployed is a question of fact, and "the trial court has considerable discretion in its determination." *Willis v. Willis*, 62 S.W.3d 735, 738 (Tenn. Ct. App. 2001).

When determining whether an obligor parent is willfully and voluntarily

---

[4] With respect to alimony, Husband asserts that the trial court "based the award of alimony on the arbitrary and wrongfully inflated income of $60,000.00."

underemployed, the trial court must make a finding as to the parent's potential earnings, "taking into consideration the obligor's educational level and/or previous work experience." *Dilley v. Dilley*, No. M2009-02585-COA-R3-CV, 2011 WL 2015395, at *7 (Tenn. Ct. App. May 23, 2011) (citing *Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App.1996); *Herrera v. Herrera*, 944 S.W.2d 379, 387 (Tenn. Ct. App. 1996); *Eatherly v. Eatherly*, No. M2000-00886-COA-R3-CV, 2001 WL 468665, at *11 (Tenn. Ct. App. May 4, 2001)). There is no presumption that a parent is willfully or voluntarily underemployed or unemployed; rather, the party alleging willful or voluntary underemployment or unemployment carries the burden of proof on the issue. *Brewer v. Brewer*, No. M2005-02844-COA-R3-CV, 2007 WL 3005346, at *8 (Tenn. Ct. App. Oct. 15, 2007).

Wife introduced income tax returns from 1994 to 1998, 2000 to 2001, and 2003 to 2007 as evidence of Husband's income. From 2003 to 2007, Husband's income ranged from a low of $74,500 in 2005 to a high of $131,097 in 2003.[5] Husband did not submit tax returns for 2008 to 2010; however, he testified that his income in 2010 was approximately $2,000 per month. To refute his testimony, Wife introduced a credit card application Husband submitted in June 2010 in which he reported his yearly income to be $85,000 per year. We have reviewed the record and have determined that the trial court acted within its discretion when it imputed an income of $60,000 to Husband for the purpose of setting his child support payments, thus we affirm the amount of child support awarded. We likewise affirm the trial court's use of $60,000 in determining Husband's alimony obligation.

## II. *Residential Schedule*

Husband contends the trial court erred in adopting the parenting plan proposed by Wife, which limited his parenting time with the children to 85 days per year. Specifically, Husband contends that it was inappropriate for the court to rely on his past behavior when making a determination about the residential schedule.

In cases involving parenting plans and the designation of a primary residential parent, we review the trial court's findings of fact de novo with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002). Appellate courts are reluctant to second-guess a court's determination regarding permanent parenting arrangements. *See Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997). While we accord trial courts broad discretion

---

[5] As evidenced by his tax returns, Husband's income, while working as a realtor, was reported as follows: $131,097 in 2003, $92,050 in 2004, $74,500 in 2005, $117,964 in 2006, and $80,916 in 2007.

in these matters, "they must still base their decisions on the proof and upon the appropriate application of the applicable principles of law." *Thompson v. Thompson*, No. M2011-02438-COA-R3-CV, 2012 WL 5266319, at *5 (Tenn. Ct. App. Oct. 24, 2012). However, it is not the role of appellate courts to "tweak [parenting plans] in the hopes of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001).

In creating the child's residential schedule and designating the primary residential parent, the court must consider factors listed in Tennessee Code Annotated § 36-6-404(b). Although allocating residential parenting time to a non-custodial parent is generally favored in Tennessee, Tenn. Code Ann. § 36-6-406(a) gives the court power to "limit a parent's residential time with his children if it determines 'based upon a prior order or other reliable *evidence*'" that certain circumstances, listed at Tenn. Code Ann. § 36-6-406(d), exist to justify imposing a limitation on parenting time. *Jernigan v. Jernigan*, No. M2011-01044-COA-R3-CV, 2012 WL 1357558, at *4 (Tenn. Ct. App. Apr. 16, 2012) (quoting Tenn. Code Ann. § 36-6-406(a)). Tennessee Code Annotated § 36-6-406(d) provides:

> A parent's involvement or conduct may have an adverse effect on the child's best interest, and the court may preclude or limit any provisions of a parenting plan, if any of the following limiting factors are found to exist after a hearing:
>
> (1) A parent's neglect or substantial nonperformance of parenting responsibilities;
>
> (2) An emotional or physical impairment that interferes with the parent's performance of parenting responsibilities as defined in § 36-6-402;
>
> (3) An impairment resulting from drug, alcohol, or other substance abuse that interferes with the performance of parenting responsibilities;
>
> (4) The absence or substantial impairment of emotional ties between the parent and the child;
>
> (5) The abusive use of conflict by the parent that creates the danger of damage to the child's psychological development;
>
> (6) A parent has withheld from the other parent access to the child for a protracted period without good cause;
>
> (7) A parent's criminal convictions as they relate to such parent's ability to parent or to the welfare of the child; or

(8) Such other factors or conduct as the court expressly finds adverse to the best interests of the child.

Here, the trial court made the following findings regarding its custody determination:

THAT the legislature has expressed a preference for joint custody unless it finds clear and convincing evidence to the contrary. The Court must look to Tennessee Code Annotated §§ 36-6-106[6] and 36-6-404[–]406. The Court has serious problems with trying to come up with a joint or equal shared parenting arrangement.

THAT a limiting factor in Tennessee Code Annotated § 36-6-406, past neglect of parenting responsibilities, exists in that until 2006 (when the children were seven and four years of age), Husband by his own admission drank alcohol excessively at least six (6) nights per week, which resulted in his total neglect of parenting responsibilities other than kissing the children goodnight each night.

THAT even when Husband agreed to stop drinking, he limited his drinking to one night a week and special occasions, it seems this was about his own pleasure and did not involve the Wife and children. He promised "himself" and did it for himself. He continues to go to the YMCA every day, and the tanning bed regularly, and it is still about himself with no appropriate interaction with the children.

THAT there has been abusive use of conflict from the very beginning of this case, which started with a restraining order preventing Husband from posting certain pictures and videos on the internet.

THAT Husband inappropriately took the minor children around his girlfriend and posted pictures of his girlfriend with his children on the internet,

---

[6] Tennessee Code Annotated § 36-6-106(a) lists factors a trial court must consider when the custody and best interest of a child are at issue. Tennessee Code Annotated § 36-6-404(b) sets out factors for a trial court to consider when creating a parenting plan. Thus, in this instance, Tenn. Code Ann. § 36-6-404(b) applies. *See Port v. Hatton*, No. M2011-01580-COA-R3-CV, 2013 WL 865549, at *5 (Tenn. Ct. App. March 6, 2013). The factors in both statutes, however, are quite similar and both allow for the consideration of any other relevant factors. *Ramsey v. Ramsey*, No. M2011-02483-COA-R3-CV, 2013 WL 313837, at *2 (Tenn. Ct. App. Jan. 25, 2013) (quoting *Thompson v. Thompson*, No. M2011-02438-COA-R3-CV, 2012 WL 5266319, at *6 (Tenn. Ct. App. Oct. 24, 2012)).

in total disregard to the fact that he [is] married.

> THAT Exhibit #41 is totally inappropriate and demonstrates a lack of judgment on [Husband's] part. The email sent to the minor child by [Husband] is a video spoof of a beer commercial and uses inappropriate language that children should not hear from their parents.

> THAT after applying the factors listed in Tennessee Code Annotated §§ 36-6-106 and 36-6-404[–]406, Mother's Proposed Permanent Parenting Plan is in the best interests of the minor children and shall be adopted. It is appropriate for Father to allow his children to visit with his parents.

The language from the Final Decree of Divorce indicates that the trial court relied, in part, on the limiting factors at Tenn. Code Ann. § 36-6-406(d) when deciding to adopt Wife's version of the permanent parenting plan. The trial court specifically stated it "had serious problems" granting the parties equal parenting time and pointed to Tenn. Code Ann. § 36-6-406(d)(1) and (5) when explaining its decision to limit Husband's parenting time.

Husband argues that the trial court erred in considering his past struggles with alcoholism[7] in making its determination regarding the residential schedule. It is true that the trial court discussed Husband's history with alcohol abuse and the impact of those struggles on his parenting ability; however, the court did not rely solely on Husband's prior conduct when rendering its decision. In addition to its reliance on Husband's "past neglect of parenting responsibilities" the court cited Husband's "abusive use of conflict" as a reason for limiting his parenting time. Examples of Husband's abusive use of conflict include his posting intimate photos of Wife on the internet, his shutting off the electricity and power to the marital residence, and his liquidation of the children's college funds while the litigation was ongoing. The trial court also discussed the fact that Husband sent an "inappropriate" beer commercial video to his daughter via email as well as his repeated decisions to go to the YMCA and tanning bed while exercising his limited amount of parenting time with the children. We have reviewed the record and have determined that the evidence does not preponderate against the trial court's adoption of the parenting plan submitted by Wife.

### III. *Husband's Retirement Account*

---

[7] Although Husband was uncomfortable characterizing himself as an alcoholic, he testified regarding his drinking problems as follows: "I consumed alcohol to excess virtually every night to the better part of a decade. I would come home, have Bourbon and coke. It's just what I did. I'm ashamed of it, wished it never happened, but that's what I did."

Husband contends the trial court erred in awarding Wife his retirement account and submits that the trial court's award was an inequitable distribution of marital property. As an initial matter, we disagree with Husband's characterization of the award of the retirement account as a distribution of marital property. The trial court specifically stated it awarded Husband's retirement account to Wife as alimony *in solido*. Regarding the retirement account, the trial court held:

> THAT Wife has approximately $15,000.00 in her retirement account and Husband has approximately $13,000.00 in his retirement account. Wells Fargo SEP IRA account number # . . . . Based on the fact that there has been a significant problem with Husband accounting for the children's college funds and in light of Wife's financial hardship, the funds in Husband's retirement account shall be awarded to Wife as alimony *in solido*.

> THAT any other accrued alimony and medical expenses for Wife and children under the temporary order are subsumed into the alimony *in solido* award, so no judgment is awarded for these amounts.

Therefore, we will review the trial court's award of Husband's retirement account pursuant to principles of law related to alimony.

A trial court has broad discretion to determine the need for spousal support, as well as the appropriate nature, amount, and duration of that support. Tenn. Code Ann. § 36-5-121; *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004). An award of spousal support will not be disturbed on appeal absent an abuse of the trial court's discretion. *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Under the abuse of discretion standard, a reviewing court cannot substitute its judgment for the trial court's judgment. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011). Rather, a reviewing court will find an abuse of discretion only if the trial court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party." *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *see also Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). Therefore, "when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105-06 (Tenn. 2011).

Tennessee recognizes four types of spousal support: (1) alimony *in futuro*, (2) alimony *in solido*, (3) rehabilitative alimony, and (4) transitional alimony. *Id.* at 107. At issue here is alimony *in solido*, which our Supreme Court has described as follows:

[A]limony in solido, is also a form of long-term support. The total amount of alimony in solido is set on the date of the divorce decree and is either paid in a lump sum payment of cash or property, or paid in installments for a definite term. "A typical purpose of such an award would be to adjust the distribution of the parties' marital property." Alimony in solido "may be awarded in lieu of or in addition to any other alimony award, in order to provide support, including attorney fees, where appropriate." Unlike alimony in futuro, the other form of long-term support, alimony in solido is considered a final judgment, "not modifiable, except by agreement of the parties," and does not terminate upon the death or remarriage of the recipient or payor spouse.

*Id.* at 108 (internal citations and footnote omitted). When awarding any type of alimony, the trial court must consider the factors at Tenn. Code Ann. § 36-5-121, and, most importantly, it must consider the "disadvantaged spouse's need and the obligor spouse's ability to pay." *Id.* at 110 (quoting *Riggs v. Riggs*, 250 S.W.3d 453, 457 (Tenn. Ct. App. 2007)).

While the trial court did not refer specifically to Tenn. Code Ann. 36-5-121 when awarding alimony *in solido*, it did refer to Wife's need and "the fact that there has been a significant problem with Husband accounting for the children's college funds" as reasons for its decision. In addition, the court stated it awarded alimony *in solido* in lieu of awarding a judgment for other accrued alimony and medical expenses owed by Husband. We have reviewed the evidence, and we find that the trial court did not abuse its discretion in awarding the retirement account to Wife. Wife testified that she filed bankruptcy in October 2010 and, at the time of trial, she had several outstanding bills and an overdraft of $97 in her checking account. Wife also testified that Husband failed to pay certain medical bills and expenses related to counseling for the children. The award of alimony *in solido* is affirmed. Husband's request to stay the alimony award is denied.

CONCLUSION

For the foregoing reasons, we affirm the trial court's decision. Costs of appeal are assessed against Husband, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

-10-